UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PAUL BRUNDAGE,<br><br>*Plaintiff*,<br><br>v.<br><br>ROBERT F. KENNEDY, JR., Secretary, United States Department of Health and Human Services,[1]<br><br>*Defendant*. | Civil Action No. 25-119 (SLS)<br><br>Judge Sparkle L. Sooknanan |

## MEMORANDUM OPINION

Paul Brundage alleges that he suffered a blood clotting disorder as a result of receiving a vaccine for COVID–19. He wants to seek compensation for this injury under the National Vaccine Injury Compensation Program (VICP), a federal program established to compensate individuals injured by vaccines. But to seek compensation for an injury allegedly caused by the COVID–19 vaccine, that vaccine must first be added to the VICP's Vaccine Injury Table. Mr. Brundage contends that the Secretary of Health and Human Services has a duty to add the COVID–19 vaccine to the Table, and that the Secretary has failed to do so. Accordingly, Mr. Brundage brought this lawsuit, asking the Court to order the Secretary to add the COVID–19 vaccine to the Vaccine Injury Table. The Secretary has moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Because the Court lacks subject matter jurisdiction, the Court grants the Secretary's motion under Rule 12(b)(1) and dismisses the case without prejudice.

---

[1] The current Secretary is substituted for his predecessor pursuant to Fed. R. Civ. P. 25(d).

## BACKGROUND

### A.      Statutory Background

Congress promulgated the National Childhood Vaccine Injury Act of 1986 (NCVIA), Pub. L. No. 99–660, 100 Stat. 3755 (codified as amended at 42 U.S.C. § 300aa–1 *et seq.*), "[t]o stabilize the vaccine market and facilitate compensation" for individuals injured by vaccines. *Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 228 (2011). To achieve these goals, the NCVIA has two major features: first, it contains "significant tort-liability protections for vaccine manufacturers," *id.* at 229, and second, it created the VICP, *Booth v. Bowser*, 597 F. Supp. 3d 1, 8 (D.D.C. 2022). The VICP is a "no-fault compensation program 'designed to work faster and with greater ease than the civil tort system.'" *Bruesewitz*, 562 U.S. at 228 (quoting *Shalala v. Whitecotton*, 514 U.S. 268, 269 (1995)).

Under the VICP, an individual who claims a vaccine injury may file a petition against the Secretary of Health and Human Services in the United States Court of Federal Claims. 42 U.S.C. § 300aa–11(a)(1). The petition is then assigned to a special master, who adjudicates it. *Id.* § 300aa–12(d). Either party may object to the special master's decision in the Court of Federal Claims. *Id.* § 300aa–12(e)(1). After the Court of Federal Claims enters a final judgment, the petitioner can choose "to accept the court's judgment and forgo a traditional tort suit for damages, or to reject the judgment and seek tort relief from the vaccine manufacturer." *Bruesewitz*, 562 U.S. at 228 (citing 42 U.S.C. § 300aa–21(a)).

But before a vaccine can give rise to a VICP claim, two preconditions must be met. First, that vaccine must be added to the so-called "Vaccine Injury Table." *See* 42 U.S.C. § 300aa–14(a); *see also Scanlon v. Sec'y of Health & Hum. Servs.*, 114 Fed. Cl. 135, 141 (Fed. Cl. 2013) ("If a vaccine is not . . . listed on the Table, any injury caused by its administration is not compensable, and the injured party has no cognizable claim under the [NCVIA]."). The Table lists vaccines and compensable injuries caused by those vaccines. *See* 42 C.F.R. § 100.3(a). Congress has itself

enumerated some vaccines for inclusion in the Table. *See* 42 U.S.C. § 300aa–14(a). And whenever the Centers for Disease Control and Prevention (CDC) "recommends a vaccine to the Secretary [of Health and Human Services] for routine administration to children" or "for routine administration in pregnant women," the Secretary "shall, within 2 years of such recommendation, amend the Vaccine Injury Table" to add that vaccine. *Id.* § 300aa–14(e); *see also id.* § 300aa–14(c)(3) (providing that the Secretary generally "may add to, or delete from, the list of injuries, disabilities, illnesses, conditions, and deaths for which compensation may be provided").

Second, any putative addition to the Vaccine Injury Table following a CDC recommendation takes effect only "upon the effective date of a tax enacted to provide funds for compensation paid with respect to the vaccine to be added." Omnibus Budget Reconciliation Act of 1993, Pub. L. No. 103–66, § 13632(a)(3), 107 Stat. 312, 646 (1993) (codified at 42 U.S.C. § 300aa–14(e) note). The funds generated by that tax pay for successful VICP claims. *Bruesewitz*, 562 U.S. at 229.

### B.    Factual & Procedural Background

The Court draws the facts, accepted as true, from the Plaintiff's Complaint. *Wright v. Eugene & Agnes E. Meyer Found.*, 68 F.4th 612, 619 (D.C. Cir. 2023).

Mr. Brundage "suffered an adverse reaction" to a COVID–19 vaccination "that left him with a severe blood clotting disorder." Compl. ¶ 1, ECF No. 1. He believes that he should now be eligible to bring a compensation claim under the VICP. Compl. ¶ 2. According to the Complaint,

the CDC (on a date the Complaint does not specify) recommended the COVID–19 vaccine[2] for routine administration to children, and "[s]ignificantly more than 2 years has passed" since then. Compl. ¶ 14. Yet the Secretary of Health and Human Services has not added the COVID–19 vaccine to the Vaccine Injury Table. Compl. ¶ 16.

On November 15, 2024, Mr. Brundage sent a notice to the Secretary that the Secretary had failed to meet his obligations under the NCVIA, and that Mr. Brundage intended to bring a lawsuit. Compl. ¶¶ 17–18; *see* 42 U.S.C. § 300aa–31(b) ("No action may be commenced under [the NCVIA] before the date which is 60 days after the person bringing the action has given written notice of intent to commence such action to the Secretary."). On January 16, 2025, Mr. Brundage filed a Complaint in this Court. The Complaint alleges that the Secretary has failed to add the COVID–19 vaccine to the Vaccine Injury Table as required by the NCVIA. Compl. ¶¶ 21–24. The Complaint brings a claim under the NCVIA, *see* 42 U.S.C. § 300aa–31(a) ("[A]ny person may commence in a district court of the United States a civil action . . . where there is alleged a failure of the Secretary to perform any act or duty under this part."), as well as claims for mandamus under 28 U.S.C. § 1361, and relief under the All Writs Act, 28 U.S.C. § 1651.

On May 5, 2025, the Secretary moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Def.'s Mot. Dismiss, ECF No. 9. That motion is fully briefed and ripe for review. *See* Pl.'s Resp., ECF No. 10; Def.'s Reply, ECF No. 12; Pl.'s Sur-Reply, ECF No. 15.

---

[2] The Court notes that there is more than one vaccine for COVID–19. *See* Kathy Katella, *Comparing the COVID-19 Vaccines: How Are They Different?*, Yale Medicine (May 20, 2025), https://www.yalemedicine.org/news/covid-19-vaccine-comparison [https://perma.cc/65AZ-U7HA]. The Complaint does not specify which COVID–19 vaccine or vaccines the CDC recommended. Because the Parties do not differentiate between the COVID–19 vaccines, this Court assumes that any differences between those vaccines are not relevant to Mr. Brundage's claims.

**LEGAL STANDARD**

"When a defendant brings a Rule 12(b)(1) motion to dismiss, the plaintiff must demonstrate that the court indeed has subject-matter jurisdiction to hear his claims." *Hill v. U.S. Dep't of the Interior*, 699 F. Supp. 3d 1, 12 (D.D.C. 2023) (first citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); and then citing *U.S. Ecology, Inc. v. U.S. Dep't of Interior*, 231 F.3d 20, 24 (D.C. Cir. 2000)). In reviewing a motion to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1), courts "construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged." *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005) (internal quotation marks and citation omitted).

**DISCUSSION**

The Secretary contends that Mr. Brundage lacks standing to bring his claims. Mot. Dismiss at 2. "To maintain an action in federal court," a plaintiff must establish standing—that "they have suffered an 'injury in fact,' 'fairly traceable to the challenged action of the defendant,' and it must be 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable [judicial] decision.'" *Johnson v. Becerra*, 111 F.4th 1237, 1243 (D.C. Cir. 2024) (alteration in original) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). The Secretary does not dispute that Mr. Brundage's inability to pursue compensation under the VICP is a sufficient injury to support standing. *See* Mot. Dismiss at 10. Nor does the Secretary appear to contest that Mr. Brundage's injury is, at least in part, fairly traceable to the Secretary's alleged failure to add the COVID–19 vaccine to the Vaccine Injury Table. *See* Mot. Dismiss at 10–11. Instead, the Secretary argues that Mr. Brundage has failed to sufficiently establish redressability in light of the VICP's excise-tax requirement. Mot. Dismiss at 11–12.

"To determine whether an injury is redressable, [the Court] consider[s] the relationship between the judicial relief requested and the injury suffered." *Murthy v. Missouri*, 603 U.S. 43, 73

5

(2024) (cleaned up). "To survive a motion to dismiss, a plaintiff 'must allege facts from which it reasonably could be inferred that, absent the [challenged policy], there is a substantial probability that . . . if the court affords the relief requested, the asserted [injury] will be removed.'" *Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930, 944 (D.C. Cir. 2004) (alterations in original) (quoting *Warth v. Seldin*, 422 U.S. 490, 504 (1975)), *abrogation on other grounds recognized by Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 621 (D.C. Cir. 2017).

Here, Mr. Brundage has not established that it is "likely" that the relief he requests—an order directing the Secretary of Health and Human Services to add the COVID–19 vaccine to the Vaccine Injury Table—would redress his injury (*i.e.*, his inability to pursue VICP compensation). *See Lujan*, 504 U.S. at 561 (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 38 (1976)). As discussed above, an individual cannot pursue VICP compensation until two conditions are met: (1) the Secretary adds the vaccine to the Vaccine Injury Table, and (2) Congress enacts an excise tax on that vaccine, which makes effective any addition by the Secretary.[3] *See* 42 U.S.C. § 300aa–14(a); 107 Stat. at 646. Ordering the Secretary to add the COVID–19 vaccine to the

---

[3] There have been few cases interpreting the excise-tax provision. The Fourth Circuit recently described additions to the Vaccine Injury Table this way: "To add a vaccine to the table, then, the CDC must recommend routine administration of the vaccine to children, and Congress must tax the vaccine." *In re Gardasil Prods. Liab. Litig.*, Nos. 24-cv-1828, 24-cv-1831, 24-cv-1832, 2025 WL 2535105, at *5 (4th Cir. Sept. 4, 2025). It is unclear whether the Fourth Circuit therefore understood the excise-tax provision to be a precondition to the Secretary's duty under 42 U.S.C. § 300aa–14(e) to add a vaccine to the Table. This Court notes that the excise-tax provision appears to provide an *effective date* for "[a] revision by the Secretary," which does not seem to be equivalent to a precondition to the Secretary's Section 300aa–14(e) duty. *See* Omnibus Budget Reconciliation Act of 1993, Pub. L. No. 103–66, § 13632(a)(3), 107 Stat. 312, 646 (1993) (codified at 42 U.S.C. § 300aa–14(e) note). In any event, the Secretary disclaims that the provision constitutes such a precondition, and the Court assumes without deciding that the Secretary's Section 300aa–14(e) duty is not contingent on Congress having promulgated a corresponding excise tax. *See* Reply at 5 (disclaiming the argument that "there is no statutory obligation to add a vaccine to the Vaccine Injury Table until Congress enacts an excise tax").

6

Vaccine Injury Table would not permit Mr. Brundage to bring a VICP claim because Congress must still pass an excise tax on that vaccine.

Mr. Brundage contends that his injury "can be remedied if this Court orders the Secretary to fulfill his statutory duty because once the Secretary does so the sole step that will remain is for Congress to levy the requisite excise tax." Resp. at 11. But this argument ignores that the injury supporting Mr. Brundage's standing is his inability to bring a VICP claim. *See* Resp. at 5. He does not dispute that, because Congress has not passed the requisite excise tax, he will remain unable to bring a VICP claim even if the Court grants the relief he seeks. *See* Resp. at 11. So, redress of his injury ultimately hinges on Congress's choice whether to pass an excise tax on the COVID–19 vaccine. But as the Supreme Court has acknowledged, when standing "'depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or predict,' . . . it becomes the burden of the plaintiff to adduce facts showing that those choices have been or will be made in such manner as to produce causation and permit redressability of injury." *Lujan*, 504 U.S. at 562 (quoting *ASARCO Inc. v. Kadish*, 490 U.S. 605, 615 (1989) (opinion of Kennedy, J.)). The allegations in Mr. Brundage's Complaint do not provide any basis for the Court to conclude that granting the relief he requests will have any effect on Congress's "unfettered" discretion to impose an excise tax, nor do they provide a basis to "predict" whether Congress's choice "will be made in such manner as to . . . permit redressability of [Mr. Brundage's] injury." *Id.* Thus, even if Mr. Brundage were to get the relief he seeks from this Court, it is not "likely . . . that [his] injury will be redressed." *Johnson*, 111 F.4th at 1243 (quoting *Lujan*, 504 U.S. at 561).

Because Mr. Brundage's inability to bring a VICP claim is the result of both the excise-tax requirement and the Secretary's alleged dereliction of his statutory duty, this situation resembles

7

the problem of multiple sufficient causes (also known as overdetermined harm) in tort law. Restatement (Third) of Torts § 27 cmt. a (A.L.I. 2010) (discussing causation "whenever there are two or more competing causes, each of which is sufficient without the other to cause the harm"). Few courts have addressed how multiple sufficient causes bear on redressability. In a 2004 opinion authored by then-Judge Alito, the Third Circuit considered the standing of a company that sought a declaratory judgment that a federal statute did not prohibit it from developing a landfill. *Khodara Env't, Inc. v. Blakey*, 376 F.3d 187, 190 (3d Cir. 2004). The government argued that the company lacked standing because even if the company received a favorable judgment, it could not develop the landfill without state environmental permits, which the company had sought but failed to obtain. *Id.* at 194. The court disagreed. *Id.*

The court rejected the government's argument on two grounds. First, "under the circumstances present [t]here, where [the company] face[d] two, independent regulatory obstacles that c[ould] only be attacked in separate proceedings, it ma[de] sense to conceptualize [the company]'s injury, not as 'the prohibition of its proposed landfill' in the general sense, but as the prohibition of its landfill by the challenged application of the [federal statute]." *Id.* Second, even defining the company's injury "more narrowly as its inability to operate the landfill," the Third Circuit invoked the multiple-sufficient-cause problem from tort law to conclude that the company had standing. *Id.* at 194–95. The court explained that the government's argument "leads logically to the conclusion that any litigation commenced by [the company] to remove either of the two obstacles that prevent it from developing the [landfill] site—the application of the [statute] and the lack of permits—would fail Article III standards." *Id.* at 195. The court rejected that "absurd result," concluding that "[u]nder the particular circumstances" presented—where the company faced "two, independent obstacles that are potentially removeable but that cannot be challenged in

8

a single litigation"—"Article III allow[ed] [the company] to challenge each obstacle separately." *Id.*

Judge Peter Phipps of the Third Circuit recently cited *Khodara* to further explain the effect of multiple sufficient causes on standing. In Judge Phipps' view, "[i]f an injury has multiple sufficient causes, then any of those causes suffices to establish fairly traceable causation," and therefore "challenging either [cause] would be enough" for that component of standing. *Fischer v. Governor of N.J.*, 842 F. App'x 741, 755–56 (3d Cir. 2021) (unpublished) (Phipps, J., concurring in part and concurring in the judgment) (citing *Khodara*, 376 F.3d at 194–95). But, he said, that is not enough for redressability. *Id.* at 756. He explained:

> In the context of multiple sufficient causes, remedying one cause would not necessarily lead to redress of the injury, which could still occur due to the other cause(s). But to avoid the "absurd" conclusion that no party has standing in the context of multiple sufficient causes . . . , the redressability analysis focuses on whether "a favorable judicial decision" would redress the injury in fact[.]

*Id.* (first quoting *Khodara*, 376 F.3d at 195; and then quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). Judge Phipps reasoned that the plaintiffs in the case before him sufficiently established redressability because they requested a remedy that would "address[] both of th[e] multiple sufficient causes." *Id.*

The Court agrees with Judge Phipps that in the context of multiple sufficient causes, the redressability analysis focuses on whether "a favorable judicial decision" would likely redress the plaintiff's injury. *See Spokeo*, 578 U.S. at 338. Here, in light of the excise-tax provision, no favorable *judicial* decision could permit Mr. Brundage to pursue a VICP claim. That is because only Congress can promulgate the excise tax that would clear the way for Mr. Brundage to bring a VICP claim. U.S. Const. art. I, § 8, cl. 1 ("The Congress shall have Power To lay and collect Taxes[.]"). And as discussed, Mr. Brundage has not adduced any facts to meet his burden to show that Congress will exercise its "unfettered" tax power "in such manner as to . . . permit

9

redressability of [his] injury." *Lujan*, 504 U.S. at 562 (quoting *Kadish*, 490 U.S. at 615 (opinion of Kennedy, J.)). Therefore, Mr. Brundage has not shown that his injury could likely be redressed with judicial intervention. *See Johnson*, 111 F.4th at 1243.

The Court's conclusion is highly dependent on the circumstances presented by this case, including Congress's design for adding vaccines to the Vaccine Injury Table and the "judicial relief requested" by Mr. Brundage. *Murthy*, 603 U.S. at 73. If Mr. Brundage had brought claims seeking relief that, if successful, would address *both* the Secretary's addition to the Table and the excise-tax requirement, he might well have standing. *See Fischer*, 842 F. App'x at 756 (Phipps, J., concurring in part and concurring in the judgment) ("Because the remedy requested . . . addresses both of th[e] multiple sufficient causes, a favorable judicial decision . . . would likely redress their injury.").

Mr. Brundage might also have standing to bring his 42 U.S.C. § 300aa–14(e) challenge if he could clear the other barrier to redressing his injury—the excise-tax requirement—through separate proceedings. That is the lesson of then-Judge Alito's conclusion in *Khodara* that a plaintiff had standing to challenge one of two "independent obstacles that are potentially removeable but that cannot be challenged in a single litigation." 376 F.3d at 195. The D.C. Circuit addressed a similar situation in *Duberry v. District of Columbia*, in which former correctional officers challenged the District of Columbia's refusal to certify them as "qualified retired law enforcement officers" under 18 U.S.C. § 926C(a), which was required for the officers to be approved to carry concealed firearms. 924 F.3d 570, 573 (D.C. Cir. 2019). There, the District argued that voiding that refusal would not afford the officers redress because the officers also needed certain identification before they could concealed carry. *Id.* at 582. The D.C. Circuit disagreed, holding that any uncertainty about the officers' ability to eventually get the required

identification did not undercut that granting relief would constitute a "necessary first step on a path that could ultimately lead to relief fully redressing [the officers'] injury." *Id.* at 583 (quoting *Power Co. of Am., L.P. v. FERC*, 245 F.3d 839, 842 (D.C. Cir. 2001)). In other words, voiding the District's refusal to certify the officers would remove "an absolute barrier" to the officers' approval to carry concealed firearms, even though the officers would have to undertake additional efforts to obtain that approval. *Id.* (quoting *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 261 (1977)).

Mr. Brundage tries to align his claims with these principles, arguing that the relief he seeks would redress his inability to bring a VICP claim because "[i]t is the Secretary's act of identifying the vaccine to be added to the Vaccine Injury Table that paves the way for Congress to provide the funding for compensation." Resp. at 6. If that were true, the Court does not doubt that Mr. Brundage would have standing; Mr. Brundage's claims would seek to remove an obstacle to Congress's enactment of the requisite excise tax and would be a "necessary first step on a path that could ultimately lead to relief fully redressing [his] injury." *Duberry*, 924 F.3d at 583 (quoting *Power Co. of Am.*, 245 F.3d at 842). But Mr. Brundage does not proffer any evidence to show that Congress's choice to enact an excise tax on the COVID–19 vaccine at all depends on the Secretary adding that vaccine to the Vaccine Injury Table. *See* U.S. Const. art. I, § 8, cl. 1; *see also, e.g.*, National Vaccine Injury Compensation Program: Addition of Trivalent Influenza Vaccines to the Vaccine Injury Table, 70 Fed. Reg. 19092, 19092 (Apr. 12, 2005) (acknowledging that Congress passed an excise tax on trivalent influenza vaccines before the Secretary added the vaccine to the Vaccine Injury Table). Thus, ordering the Secretary to add the COVID–19 vaccine to the Table does not appear to be a "necessary first step" to Congress enacting an excise tax and Mr. Brundage ultimately being able to bring a VICP claim. *See Duberry*, 924 F.3d at 583.

Instead, although the relief Mr. Brundage seeks would remove one barrier to bringing a VICP claim, there does not appear to be any further efforts he could take to surmount the excise-tax requirement. Congress passing an excise tax on the COVID–19 vaccine is not the sort of obstacle—like the state permit in *Khodara* or the required identification in *Duberry*—that is "potentially removeable" through further efforts in other proceedings. *See Khodara*, 376 F.3d at 195; *cf. Sierra Club v. U.S. Dep't of the Interior*, 899 F.3d 260, 285 (4th Cir. 2018) (explaining that "[t]he removal of even one obstacle to the exercise of one's rights" is "sufficient to show redressability," even if the plaintiff may have to later challenge "other barriers [that] remain" to obtain full redress). Given that it is Congress's "unfettered choice[]" whether to pass an excise tax, *see Lujan*, 504 U.S. at 562, the Court is not convinced Mr. Brundage has met his burden to show that "a favorable [judicial] decision" would "likely" permit him to eventually bring a VICP claim, *Johnson*, 111 F.4th at 1243 (alteration in original) (quoting *Lujan*, 504 U.S. at 561).

At bottom, the excise-tax requirement means that redress of Mr. Brundage's inability to bring a VICP claim lies with Congress. And because Mr. Brundage has not provided this Court with a basis to predict how Congress will act, he has not sufficiently shown that the relief he seeks from this Court "will produce tangible, meaningful results in the real world." *Duberry*, 924 F.3d at 584 (quoting *Tel. & Data Sys., Inc. v. FCC*, 19 F.3d 42, 47 (D.C. Cir. 1994)). Therefore, Mr. Brundage lacks standing and this Court cannot hear his claim.[4]

---

[4] The Secretary also argues that Mr. Brundage's claims are now moot because the Secretary removed the COVID–19 vaccine from the CDC's schedule for recommended routine administration to children and pregnant women. Reply at 2. Whereas the CDC had previously categorized the COVID-19 vaccine as a recommended "routine vaccination" for ages 6 months to 18 years, the CDC recently revised the immunization schedule to categorize the vaccine as a "shared clinical decision-making" vaccination for ages 6 months to 17 years (it retained the recommendation as a "routine vaccination" for people aged 18 or older). *Compare Recommended Child and Adolescent Immunization Schedule for Ages 18 Years or Younger*, U.S. Ctrs. for Disease Control & Prevention (Nov. 16, 2023), https://www.cdc.gov/vaccines/hcp/imz-

## CONCLUSION

For the foregoing reasons, the Court grants the Secretary's Motion to Dismiss, ECF No. 9. A separate order will issue.

                                                        _____

                                                        SPARKLE L. SOOKNANAN
                                                        United States District Judge

Date:   September 29, 2025

---

schedules/downloads/past/2024-child.pdf [https://perma.cc/VYC3-9EZ2], *with Recommended Child and Adolescent Immunization Schedule for Ages 18 Years or Younger*, U.S. Ctrs. for Disease Control & Prevention (July 2, 2025), https://www.cdc.gov/vaccines/hcp/imz-schedules/downloads/child/0-18yrs-child-combined-schedule.pdf [https://perma.cc/82DP-6YB3]. The CDC also recently similarly revised guidance with respect to pregnant women. *Compare Recommended Adult Immunization Schedule by Medical Condition or Other Indication*, U.S. Ctrs. for Disease Control & Prevention (Nov. 16, 2023), https://www.cdc.gov/vaccines/hcp/imz-schedules/downloads/past/2024-adult.pdf [https://perma.cc/AHT7-5LPW] ("Recommended for all adults"), *with Recommended Adult Immunization Schedule by Medical Condition or Other Indication*, U.S. Ctrs. for Disease Control & Prevention (July 2, 2025), https://www.cdc.gov/vaccines/hcp/imz-schedules/downloads/adult/adult-combined-schedule.pdf [https://perma.cc/PN5Q-G6WT] ("No guidance"). Mr. Brundage contends that his claims are not moot because the CDC did not revise its guidance for 18-year-olds, and in any case the revisions did not negate the Secretary's duty under 42 U.S.C. § 300aa–14(e). Sur-Reply at 1–7. But the Parties' arguments go to whether the Secretary has violated Section 300aa–14(e), which is a merits question. Thus, the CDC's revisions do not mean "the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome," and therefore this case is not moot. *See Samma v. DOD*, 136 F.4th 1108, 1113 (D.C. Cir. 2025) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)).